UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MITCHELL G. ZIMMERMAN,

           Plaintiff,

       v.                                                  Case No. 21-cv-0209-bhl

GLENN BORNICK,

           Defendant.

---

## SCREENING ORDER

---

       Mitchell G. Zimmerman, who is currently serving a state prison sentence at the Fox Lake Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Zimmerman's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

       Zimmerman has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Zimmerman has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $1.56. Zimmerman's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

On December 20, 2020, Zimmerman was on a ten-day room confinement sanction. Dkt. No. 1 at 2. At about 10:15 p.m., he walked to the bathroom to urinate and get some water, like he does every night. While in the bathroom, he observed Defendant Glenn Bornick, a corrections officer, watching him from the hall through a grated window. As Zimmerman began to leave the bathroom, Bornick started yelling at him for violating his sanction by talking while in the bathroom. Zimmerman asked Bornick why he was harassing him, noting that Bornick was assigned to a different wing, so there was no reason for him to be in Zimmerman's wing other than to harass him. Zimmerman explains that he has filed numerous inmate complaints against Bornick. He knows the complaint examiner told Bornick about the inmate complaints because every time he filed one, Bornick would make a comment about it. *Id.* at 3.

On his way back to his room, Zimmerman saw Bornick talking to his unit's assigned officer and asking him to pull Zimmerman's face card, which documents all the warnings Zimmerman has received. Not long after, Bornick ordered Zimmerman out of his cell and informed him he was giving him a warning for violating his sanction. Zimmerman said he started complaining and trying to explain his side when Bornick said, "well, if you're going to complain, I'm going to write you a Conduct Report for [being] disruptive." Dkt. No. 1 at 3. Bornick then twice ordered Zimmerman back into his room before Zimmerman complied.

Zimmerman explains that, shortly thereafter, he was removed from his room in handcuffs and placed in temporary lockup. A security supervisor informed him that he was receiving a conduct report for disruptive behavior because he had asked Bornick why he was on his unit harassing him and that, after Zimmerman left the bathroom, another inmate also asked Bornick why he was on their unit. Bornick then packed Zimmerman's property and confiscated about $100

3

worth of his property, falsely asserting that it was contraband. A supervisor later returned some of the property because it was not contraband. Zimmerman states that the conduct report notes that Bornick was just going to give Zimmerman a warning until he started complaining. Zimmerman received sixteen days of room confinement as a result of the conduct report. Dkt. No. 1 at 4.

## THE COURT'S ANALYSIS

Zimmerman asserts that Bornick retaliated against him in violation of the First Amendment. To state a retaliation claim, a plaintiff must allege a defendant was "motivated to punish him with materially adverse action because he engaged in constitutionally protected activity." *Winston v. Fuchs*, 837 F. App'x 402, 404 (7th Cir. 2020) (citations omitted). Not every "adverse action" gives rise to a claim of retaliation. And while the retaliatory action need not be extreme or independently actionable, it must be likely to deter an ordinary individual from exercising his constitutional rights. *See Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise."); *Douglas v. Reeves*, 964 F.3d 643, 647 (7th Cir. 2020) ("We apply an objective test: whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity.").

Zimmerman fails to state a retaliation claim because Bornick's alleged actions would not be likely to deter a person of ordinary firmness from exercising his rights. Zimmerman alleges that Bornick went out of his way to watch Zimmerman on a single night to ensure he was complying with his room confinement sanction. Then, after Zimmerman was moved to temporary lockup, Bornick confiscated about $100 worth of property, claiming it was contraband.

4

Zimmerman says it was not contraband and explains that a supervisor returned *some* of the property, though he does not specify how much of the property was returned to him.

Zimmerman characterizes Bornick's actions as harassment, but the Court cannot reasonably reach the same conclusion. Bornick, who is a corrections officer, monitored Zimmerman, who is a prisoner, to ensure Zimmerman was complying with his room confinement sanction. According to Zimmerman, Bornick "yelled" at him, not because he went to the bathroom, but because he was talking to another inmate while in the bathroom. Zimmerman does not deny that he was talking while in the bathroom, nor does he allege that talking to other inmates was allowed under his room confinement sanction. Prisoners are not at liberty to decide which rules and orders they will comply with; they "are and must be required to obey orders." *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009) (citations omitted). Even if Bornick was not on his assigned unit, the Court finds that his enforcement of the room confinement sanction is not an adverse action that would deter a prisoner from exercising his rights.

Nor would Bornick's alleged confiscation of property that he deemed to be contraband be likely to deter a prisoner from exercising his rights. Zimmerman explains that he received *some* of his property back, confirming that Bornick's assessment was not completely inaccurate. In any event, even assuming Bornick improperly characterized the seized property as contraband, this single action does not qualify as a *materially* adverse action. Given that Bornick's characterization of the property was reviewed by a supervisor, any improperly characterized property would be (and was) returned to Zimmerman. While a temporary deprivation of one's property on a single occasion may be frustrating, it is not so extreme that it would deter one from exercising his rights. *See Long v. Hammer*, 727 F. App'x 215, 217 (7th Cir. 2018) (holding that de minimis inconveniences would not discourage protected speech).

5

Finally, for purposes of screening only, the Court finds that Bornick allegedly changing Zimmerman's warning to a conduct report (which resulted in an additional sixteen days of room confinement) would likely deter a prisoner from exercising his rights. However, Zimmerman fails to state a retaliation claim on this basis because the Court cannot reasonably infer that Bornick's decision to do so was motivated by Zimmerman's protected activity. Bornick stated, and Zimmerman confirms, that the warning was changed to a conduct report because Zimmerman argued and complained about receiving a warning, *not* because Zimmerman had previously filed inmate complaints. Confronting and arguing with a prison official, particularly in full view of other inmates, is "inconsistent with the legitimate penological interest of prison discipline and order." *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). Accordingly, such speech is not protected and cannot form the basis of a retaliation claim. *Id.* In other words, because Bornick was motivated to change the warning into a conduct report by Zimmerman's unprotected speech (arguing with Bornick) rather than by Zimmerman's protected speech (filing inmate complaints), Zimmerman cannot state a retaliation claim on this basis.

Although civil plaintiffs are generally permitted at least one opportunity to amend their pleadings, the Court need not offer such an opportunity where the amendment would be futile. *See Boyd v. Bellin*, No. 20-3087, 2021 WL 479769 (7th Cir. Feb. 10, 2021). Zimmerman's complaint is thorough in its allegations of facts surrounding this claim, so the Court finds that further amendment would be futile.

**IT IS THEREFORE ORDERED** that Zimmerman's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the agency having custody of Zimmerman shall collect from his institution trust account the $348.44 balance of the filing fee by collecting monthly payments from Zimmerman's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Zimmerman is transferred to another institution, the transferring institution shall forward a copy of this Order along with Zimmerman's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Zimmerman is confined.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 19th day of March, 2021.

s/ *Brett H. Ludwig*  
BRETT H. LUDWIG  
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.